THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| **UNITED STATES OF AMERICA**, ) | |
| ) | |
| Plaintiff, ) | **CRIM. NO.: 2011-01** |
| v. ) | |
| ) | |
| **MIGUEL ANGEL PASCUAL PICHARDO** ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM OPINION AND ORDER

FINCH, Senior Judge

THIS MATTER is before the Court on the motion of defendant Miguel Pascual Pichardo ("Pichardo" or "defendant") to suppress evidence obtained during a traffic stop of his vehicle. Pichardo contends that both the initial stop and the subsequent search were illegal and that the items seized must be suppressed. He also argues that statements he made must be suppressed because they were the fruits of the officers' illegal search and seizure. The government opposes the motion, asserting that the seizure occurred pursuant to a lawful traffic stop followed by consent to search the vehicle.[1]

A hearing was held on this matter on June 22, 2011. Based on the evidence presented at the hearing, the Court concludes that the conduct of the police did not violate defendant Pichardo's Fourth and Fifth Amendment rights. Accordingly, the motion will be denied.

---

[1] Although defendant did not raise the issue of a failure to provide Miranda warnings, the government also argues that (1) the defendant was not in custody when he made certain statements and thus police were not required to Mirandize the defendant, and (2) that other statements made by Pichardo were not responses to police interrogation and are thereby not suppressible for failure to provide Miranda warnings.

### I. Factual Background

On January 9, 2011, Officer Edgardo Ojeda and Detective Daniel Rodriguez of the Virgin Islands Police Department conducted a traffic stop of a silver Jeep Cherokee driven by defendant Miguel Pichardo in the vicinity of Estate Sunny Acres, in St. Croix. Ojeda and Rodriguez testified that they stopped Pichardo because he was talking on a cellular phone while driving, a violation of Virgin Islands law.[2] The officers initiated the stop by activating their patrol car's lights and siren. In response, Pichardo slowed down but did not immediately stop his vehicle. Once he stopped, he abruptly exited the vehicle, still talking on his cell phone, and approached the officers' car. Ojeda partially exited the patrol car and signaled Pichardo to stop. Det. Rodriguez, who was driving, also exited his vehicle and ordered Pichardo to stand by his car. Rodriguez then commanded Pichardo to produce his license, registration and insurance information. Pichardo indicated that he had difficulty understanding English, and thereafter both officers communicated with the defendant in Spanish. Rodriguez and Ojeda wore vests that were marked "police" and were armed but did not have their guns drawn at any time during the stop.

In response to Rodriguez's request for the documents, Pichardo presented his Puerto Rican driver's license. He then went to retrieve the registration and insurance documents from a red bag located in the rear passenger seat. When Pichardo showed the documents to Rodriguez, Rodriguez indicated that the papers were not the documents he had requested. Pichardo apologized and explained that he wasn't from St. Croix and that the vehicle was a rental car.

---

[2] Officer Ojeda testified that based on his observation of Pichardo in his vehicle, Pichardo was in violation of § 509 of title 20 of the Virgin Islands Code. Section 509 provides that "no person may operate a motor vehicle upon the public roads or highways of the Virgin Islands while using a handheld mobile telephone to engage in a call while the vehicle is in motion."

Rodriguez suggested that he look in the glove compartment. Pichardo did so and located the rental contract and presented it to Rodriguez.

While Rodriguez was speaking with Pichardo near the driver's door, Ojeda approached the defendant's car from the right side and observed the interior of the vehicle. Ojeda attested that he was checking the vehicle for other passengers in order to ensure the officers' safety.[3] Ojeda testified that Pichardo looked nervous and Rodriguez testified that Pichardo broke eye contact with him in order to observe what Ojeda was doing. Ojeda observed numerous large duffel bags in the rear seat and trunk area of the car. Ojeda asked Pichardo if he had any weapons or anything illegal in his vehicle. Pichardo stated that he did not. Ojeda testified that he asked Pichardo if he could look in the car and Pichardo said "Go ahead, I have nothing."[4]

Ojeda began by searching the front passenger side and continued to the rear passenger side. He observed a large number of bags and asked Pichardo what was in the bags. Pichardo did not answer. Ojeda asked again and Pichardo shook his head but remained silent. Pichardo kept shaking his head and acting nervous. Ojeda asked if he could open the bag and Pichardo said, "Go ahead." When Ojeda partially opened one of the bags, he observed brick-like objects wrapped in plastic. Ojeda asked, "What is this?" Pichardo responded by jumping into the vehicle from the rear driver's side and unzipping the bag completely and saying, "You know what it is." Ojeda said that it looked like bricks of cocaine. Ojeda testified that, based on his experience, he recognized the packaging as bricks of cocaine. Pichardo became distressed and began to exclaim, "My family, my family, look what I did just for a couple of dollars."

---

[3] There was testimony that the rear windows were lightly tinted. Thus it is credible that the officer would need to inspect the vehicle at closer range to check for passengers.
[4] Pichardo testified that he responded by saying "This is your job." While the Court draws no conclusions about whether Pichardo also made that comment, it finds Officer Ojeda's testimony that Pichardo said "go ahead" to be credible.

At that point, Rodriguez arrested Pichardo and put him in handcuffs. Pichardo began to explain that he been paid $3000 to come from Puerto Rico to move the drugs from one location to another and that he had agreed to do it in order to pay off a debt of approximately $10,000. Pichardo suggested that the officers take the drugs and let him go, but Rodriguez told him that the police didn't operate that way here. The traffic stop lasted approximately 20 minutes.

## II.     Discussion

### A. Was the seizure of cocaine in violation of the Fourth Amendment?

Pichardo argues that the seizure of the cocaine from his vehicle violated his rights under the Fourth Amendment and thus, pursuant to the exclusionary rule, it must be suppressed. The Fourth Amendment prohibits unreasonable searches and seizures. *United States v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011). Evidence obtained through a violation of the Fourth Amendment is excludable as the "fruit of the poisonous tree." *United States v. Pelullo*, 173 F.3d 131, 136 (3d Cir. 1999) (citing *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963)).

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810. Generally, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id*. (citations omitted). "[O]nce a car has been legally stopped, the police may 'escalate' the encounter by visually inspecting the interior of the car, and checking credentials and asking questions of the occupants." *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) (quoting *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003). Moreover, while the Fourth

Amendment generally prohibits warrantless searches of automobiles, "a search conducted pursuant to consent is one of the specifically established exceptions to the search warrant requirement." *Givan*, 320 F.3d at 459 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). When consent is asserted as the lawful basis for the search, the government "has the burden of proving that the consent was, in fact, freely and voluntarily given." *Schneckloth*, 412 U.S. at 222. Whether consent to search was voluntary or a product of coercion "is a question of fact to be determined from the totality of all of the circumstances." *Id*. at 227. The court considers factors such as "the setting in which the consent was obtained, the parties' verbal and non-verbal actions, and the age, intelligence, and educational background of the consenting individual." *Givan,* 320 F.3d at 459.

First, the Court finds that because the officers saw Pichardo driving with a cell phone to his ear, they had probable cause to conduct the traffic stop. Furthermore, upon stopping the defendant's car, the officers were entitled to visually inspect the interior of the car. *Mosley*, 454 F.3d at 252. Contrary to defendant's argument, the visual inspection of Pichardo's vehicle did not amount to a "search" prohibited by the Fourth Amendment. *See, e.g., Texas v. Brown*, 460 U.S. 730, 740 (1983) (finding it "beyond dispute that [the police officer's] action in shining his flashlight to illuminate the interior of [defendant's] car trenched upon no right secured to the latter by the Fourth Amendment").[5] The Supreme Court grounded its ruling in *Brown*, on the plain view doctrine wherein police officers, "if . . . lawfully engaged in an activity in a particular place . . . perceive a suspicious object, they may seize it immediately." *Brown*, 460 U.S. at 739. *See also United States v. Rascon-Ortiz*, 994 F.2d 749, 754-55 (10th Cir. 1993) (noting that "there

---

[5] Similarly, the Supreme Court determined that the fact that the officer changed his position so that he could see what was inside the car was irrelevant to the Fourth Amendment analysis. *Id*. at 740.

is no legitimate expectation of privacy in a car's interior" and that a "brief visual examination of the vehicle's undercarriage was not a search").

The Court also finds that Pichardo voluntarily consented to the search of his vehicle. Officer Ojeda testified that he asked if he could search the vehicle and Pichardo told him, "go ahead." Det. Rodriguez confirmed that Pichardo gave consent. Although Pichardo is a Spanish speaker with a limited command of English, both officers spoke to the defendant in Spanish and both the officers and Pichardo affirmed that he understood them. The officers did not have their guns drawn and there was no testimony that either officer raised their voice or threatened the defendant in any way.

> B. **Should Pichardo's statements concerning his involvement with the cocaine be suppressed as a product of an illegal search and seizure?**

Pichardo also seeks to suppress statements he made following the discovery of cocaine in his vehicle because they were the fruits of an alleged illegal search and seizure. *See United States v. Herrold*, 962 F.2d 1131, 1137 (3d Cir. 1992) (the fruit of the poisonous tree doctrine "requires the exclusion of . . . derivative evidence, both tangible and testimonial, acquired as a result of the unlawful search.") (citing *Wong Sun v. United States*, 371 U.S. 471, 484-485 (1963). Inasmuch as the Court has already concluded that Pichardo was detained pursuant to a lawful traffic stop and that the officers lawfully searched his vehicle, the issue of whether the statements are suppressible pursuant to the poisonous fruit doctrine is moot.

To the extent that Pichardo implies that he was subjected to custodial interrogation and provided unwarned statements, the Court finds that position to be without merit. While it is true that an individual in custody may not be interrogated unless he has first been adequately advised of his rights, *Miranda v. Arizona*, 384 U.S. 436, 479 (1966), "persons temporarily detained

pursuant to [investigatory] stops are not 'in custody' for the purpose of Miranda." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984).[6]  There is no question here that Pichardo was originally detained pursuant to a traffic stop.  During the stop, the police officers asked him for identification documents and documents associated with the vehicle.  After discovering cocaine bricks in a duffel bag, Officer Ojeda asked Pichardo, "What is this?"  At that point, Ojeda was entitled to briefly question Pichardo to dispel or confirm his suspicion that the contents of the bag were contraband.  *See United States v. Lewis*,  2008 WL 2625634, at *4 (D.V.I. 2008) ("Where police officers have a reasonable suspicion that the suspect engaged in criminal activity, may briefly detain and question to dispel or confirm suspicion.") (citing *United States v. Scheets*, 188 F.3d 829, 838 (7th Cir.1999).[7]  This was not a custodial interrogation as Pichardo had not been "taken into custody or otherwise deprived of his freedom of action in any significant way." *Berkemer*, 468 U.S. at 428.[8]  It is not clear whether the remaining statements made by Ojeda

---

[6] In *Berkemer*, the Supreme Court explained why Terry stops do not normally require Miranda warnings:

> Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose observations lead him reasonably to suspect that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke suspicion. The stop and inquiry must be reasonably related in scope to the justification for their initiation.  Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released.  The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda.

*Berkemer*, 468 U.S. at 439-40 (internal quotations and citations omitted).
[7] In *Lewis*, police officers stopped a car because the occupants were not wearing seatbelts.  After stopping the car, the police observed firearms in the car and proceeded to ask the suspects if they had a license to possess the firearms.  The Court determined that the officers' questions did not convert the investigatory stop into custodial interrogation for Miranda purposes.  *Id*. at *6.
[8] In *Berkemer*, the defendant had been pulled over for erratic driving and made incriminating statements in response to the officer's question of whether he had used intoxicants.  *Id*. at 423-24.   The Supreme Court noted that where the respondent was not placed under any "restraints comparable to those associated with a formal arrest," that the police officer was not required to given Miranda warnings prior to the time he had arrested the defendant.  *Id*. at 441-42.

concerning the amount of money he was paid to move the cocaine, the reason he agreed to do it, or his offer to the police to take the cocaine in exchange for his liberty, were made before or after he was under arrest. However, that is irrelevant in this case because the statements were spontaneous utterances and not the product of interrogation. Thus, they do not fall under the protection of Miranda. *See Rhode Island v. Innis*, 446 U.S. 291, 300-02 (1980) (Miranda safeguards only come into play when a person in custody is subjected to either "*express questioning or its functional equivalent*") (emphasis added); *see also United States v. Calisto*, 838 F.2d 711, 718 (3d Cir. 1988) (affirming district court's holding that defendant's "blurt out" of an inculpatory statement was not made in response to interrogation). In short, the statements were not the product of an illegal search and seizure; nor were they the result of custodial interrogation.

### III. Conclusion

For the reasons stated above, the Court finds that the police did not violate Pichardo's constitutional rights in conducting the traffic stop of his vehicle. Accordingly, it is hereby **ORDERED** that defendant Miguel Pichardo's motion to suppress the cocaine seized from his vehicle and the statements made in connection with the seizure is **DENIED**.

**ENTER**:

Dated: July 5, 2011

_____/s/_____
Raymond L. Finch
Senior U.S. District Judge